CLYDE&CO

Clyde & Co US LLP
2 Grand Central Tower
140 East 45th Street, 26th Floor
New York, New York 10017
Telephone: 212 710 3900
Facsimile: 212 710 3950
www.clydeco.us
david.knapp@clydeco.us

August 25, 2026

**VIA ECF**
Hon. Stanley Blumenfeld, Jr.
United States District Court
Central District of California
Courtroom 6C, 6th Floor
350 West 1st Street
Los Angeles, California 90012

Re: *Shawnell Byrd et al v. Delta Airlines, Inc.*
Case No. 2:26-cv-05071-SB-MBK

Dear Judge Blumenfeld Jr.,

We submit this joint report on behalf of Plaintiffs Shawnell Byrd *et. al.* and Defendant Delta Airlines, Inc. and in response to Your Honor's Order dated August 19, 2026. Both parties have met-and-conferred on the issues identified in Your Honor's Order and have set forth their respective positions below.

**Delta's Position**

It is Delta's position that the case should be stayed as to both Spirit *and* Delta for the reasons explained below. If a stay against Delta is not granted, then Delta is prepared to file a motion to dismiss for lack of personal jurisdiction. Delta preserved this affirmative defense in its Answer, and the facts make clear that Ohio, not California, is the appropriate venue for this action.

***The Case Should be Stayed Against Delta and Spirit.*** As Your Honor knows, the general rule is that the filing of a bankruptcy petition "operates as an automatic stay of the commencement or continuation of any action against a bankrupt debtor or against the property of a bankrupt estate." 11 U.S.C. § 362(a); *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir. 1993). Here, Spirit filed for bankruptcy in August 2025 in the Southern District of New York, ceased its operations in April 2026, and is currently undergoing a court-supervised liquidation of its assets. *See Spirit Aviation Holdings, Inc.*, 25-11897-shl (S.D.N.Y. 2025). Thus, Delta agrees with Plaintiff that a stay should be entered against Spirit.

As to Delta, while the general rule is that the bankruptcy stay only applies to the "bankrupt debtor," courts have made exceptions in "unusual situations." *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). California courts have applied this rule in similar circumstances. In one such example, the Plaintiff sued the City of Stockton and individual defendants after he was wrongfully terminated from the fire department. *Hittle v. City of Stockton, Cal.*, No. 2:12-CV-00766-GEB, 2012 WL 3886099, at *2 (E.D. Cal. Sept. 6, 2012). The City of Stockton went

CLYDE&CO



bankrupt, and a stay was issued against them, and the question for the Court was whether the stay should also apply to the individual defendants. The Court held that it should. In doing so, the Court pointed to the fact that "the same factual allegations support [Plaintiff's] claims" against both defendants. *Id.* at *2. Because of the nature of the allegations and claims, the Court concluded "it is not possible to draw a meaningful distinction between claims asserted against the City of Stockton and claims asserted against the Individual Defendants." *Id.* "Ruling on issues concerning the liability of the individual defendants would require 'the court to consider the possible liability of the city' in violation of the bankruptcy stay." *Id.*

The same result applies with equal force here. The claims made by Plaintiff against Delta and Spirit are indistinguishable from one another. *See*, *e.g.*, Complaint at ¶¶ 38-53. Like *Hinkle*, there is no "meaningful distinction" between the claims asserted against both defendants as Plaintiff has plead the same factual and legal causes of action against both Delta and Spirit. *Id.* Indeed, as Your Honor explained, it is hard to see how the claims against Delta can proceed "without the participation of Spirit given the intertwined allegations of negligence." Delta will also be severely prejudiced if this litigation goes forward without Spirit. Ruling on issues of Delta's liability will surely "require the Court to consider the possible liability" of Spirit, and vice versa. It will also burden Delta to litigate the case if it cannot rely on witnesses, documents, and information obtained from Spirit. Thus, it is Delta's position that a stay should be entered as against both Delta and Spirit.

***There Is No Personal Jurisdiction Over Delta in California.*** If the Court does not issue a stay as to Delta, Delta intends to proceed with filing a motion to dismiss for lack of personal jurisdiction. There is no waiver here, because Delta preserved this defense by asserting it as an affirmative defense in its Answer. *See* Answer at ¶ 72; *see*, *e.g.*, McCurley *v. Royal Seas Cruises, Inc*., No. 17-CV-00986-BAS-AGS, 2019 WL 3006469, at *4 (S.D. Cal. July 10, 2019) (a defendant need only "simply invok[e]" its personal jurisdiction defense "in its first defensive move to place a plaintiff on 'fair notice' that the defense will be raised."); *Rosen v. Masterpiece Mktg. Grp., LLC*, 222 F. Supp. 3d 793, 803 (C.D. Cal. 2016) (saying same).

Here, there is no general jurisdiction over Delta. General jurisdiction asks where the defendant is "at home," which the US Supreme Court has defined as the state of incorporation or principal place of business. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Delta is a Delaware corporation with its headquarters in Georgia. As such, Delta is not "at home" in California.

Likewise, there is no specific jurisdiction over Delta in California. Plaintiff cannot satisfy the "arises out of or relates to" prong of the specific jurisdiction test. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). For specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). When there is no such connection, "specific jurisdiction is lacking regardless of the extent of defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017).

Here, there is no connection—let alone a "substantial connection"—between Plaintiffs causes of action, Delta, and California. This incident occurred in Ohio; the plaintiffs were allegedly injured in Ohio; and all the witnesses, documents, and evidence are in Ohio. Simply put, Plaintiffs causes of action are not connected to California and do not "arise out of or relate to" Delta's conduct in California.

Thus, if the case is not stayed against Delta, Delta intends to move to dismiss for lack of personal jurisdiction over Delta.

**Plaintiff's Position**

I. Spirit's Bankruptcy

Plaintiffs oppose a stay of the claims against Delta. Spirit's automatic stay applies to Spirit and property of its bankruptcy estate; it does not automatically extend to Delta, a separate nondebtor defendant. 11 U.S.C. § 362(a); *Boucher v. Shaw*, 572 F.3d 1087, 1092–93 (9th Cir. 2009).

Spirit filed bankruptcy in August 2025 and is now effectively undergoing an orderly liquidation rather than a continuing reorganization. Spirit has ceased passenger operations and is selling assets under bankruptcy-court supervision. *In re Spirit Aviation Holdings, Inc.*, No. 25-11897 (SHL) (Bankr. S.D.N.Y.) Plaintiffs are asking for judicial notice under Fed. R. Evid. 201(b)(2) of the Wind-Down Order entered May 8, 2026 and the subsequent bidding-procedures and sale orders.

The purposes of the automatic stay—protecting the debtor's ability to reorganize and preventing individual creditors from obtaining an unfair advantage—are not meaningfully advanced by halting independent claims against Delta while Spirit liquidates. *See United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir. 1993); *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093–96 (9th Cir. 2007).

A stay also will not make Spirit's witnesses or evidence more available. It may instead cause further loss of witnesses, records, and recollections. The relevant claims concern Delta's independent conduct. It is the Plaintiffs' understanding that Spirit's aircraft was stationary at the gate at Cleveland Hopkins International Airport when Delta's aircraft, while taxiing under Delta's control, collided with it. Plaintiffs were passengers on Spirit's aircraft, but Delta's liability can be evaluated based on Delta's operation of its aircraft, crew conduct, communications, and compliance with applicable procedures.

Relevant evidence is also available from Cleveland Hopkins International Airport and the airport control tower, including air-traffic-control personnel, tower communications, airport and ramp records, surveillance footage, and other contemporaneous materials. Plaintiffs do not contend that these sources replace every Spirit record. They demonstrate, however, that the case is not dependent exclusively on Spirit's participation.

The fact that some allegations may overlap does not require stopping the entire case. Any particular discovery concern can be addressed through subpoenas, protective orders, targeted discovery, or coordinated scheduling. A contingent contribution claim, without an identified absolute indemnity obligation, does not justify a blanket stay. Delta may present any valid claim against Spirit through the bankruptcy process.

Delta's reliance on *Hittle* does not establish otherwise. *Hittle* relied on an "identity of interests" theory concerning conduct materially intertwined with the debtor's own conduct. Hittle v. City of Stockton, No. 2:12-cv-00766-GEB-KJN, 2012 WL 3886099, at *2 (E.D. Cal. Sept. 6, 2012). But

the Ninth Circuit has declined to broadly apply that theory and has questioned the continuing vitality of the "unusual circumstances" exception on which it rests. *In re Chugach Forest Products, Inc.*, 23 F.3d 241, 246–47 (9th Cir. 1994). Here, Delta is a separate air carrier, and the alleged impact was caused by Delta's moving aircraft striking Spirit's stationary aircraft. Delta has not shown that adjudicating its independent conduct would necessarily determine Spirit's liability.

If Delta seeks relief beyond the automatic stay, that relief must be sought from the bankruptcy court under 11 U.S.C. § 105(a), through the procedures applicable to an injunction affecting a nondebtor. Fed. R. Bankr. P. 7001(g); *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093–96 (9th Cir. 2007). Delta has not shown that proceeding against it would enforce a judgment against Spirit's estate or interfere with Spirit's liquidation.

Nor is a stay warranted under the Court's inherent authority. Under *Landis*, the Court considers the possible damage resulting from granting a stay, the hardship or inequity imposed on the party required to proceed, and the orderly course of justice. *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110–12 (9th Cir. 2005).

The possible damage from granting a stay is substantial. An indefinite delay risks unavailable witnesses, lost records, and faded memories, while Spirit's liquidation provides no reasonable prospect that those problems will improve. The Ninth Circuit requires a greater showing when a requested stay is especially long or indefinite. *Dependable Highway Express, Inc. v. Navigators Insurance Co.*, 498 F.3d 1059, 1066–67 (9th Cir. 2007).

Delta has not identified a hardship beyond the ordinary burden of defending a lawsuit. Plaintiffs therefore request that the Court deny a blanket stay. If limited protection is necessary, it should address only particular discovery directed at Spirit and should not prevent Plaintiffs from prosecuting their claims against Delta.

II. Jurisdiction

Plaintiffs oppose dismissal before Delta's California contacts and their relationship to the claims have been developed. Delta deliberately operates an extensive airline business in California, including scheduled passenger service, airport operations, employees, aircraft, facilities, commercial relationships, and continuing use of California airports and airspace. These are purposeful contacts with California, not passive or fortuitous contacts.

Under *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) the Ninth Circuit applies a three-part inquiry:

(1) The non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Plaintiffs recognize that California residence, medical treatment, or Delta's general business presence alone would not establish specific jurisdiction. The issue is whether Delta's California-based operational activities bear a meaningful relationship to the aviation practices challenged here. The claims concern Delta's aircraft movement, ground-safety procedures, crew training, supervision, dispatch, maintenance, and communications. California-based Delta personnel or facilities may have participated in creating, administering, implementing, or monitoring those same systems.

The collision's location in Ohio does not conclusively answer that question. The Supreme Court has held that the "arise out of or relate to" requirement is not limited to strict causation, while also recognizing that the requirement imposes real limits on jurisdiction. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 362–66 (2021). Plaintiffs accordingly rely on a specific factual theory: Delta's own California operations may have formed part of the operational system governing the conduct alleged, not merely on the fact that Delta does business in California.

The relevant facts are primarily within Delta's control. Plaintiffs request limited jurisdictional discovery concerning:

1. the location and administration of Delta's applicable ground-operations and aircraft-movement policies;

2. the identity and location of Delta personnel who developed, supervised, or enforced those policies;

3. any California connection to the aircraft, crew, maintenance, dispatch, or operational systems involved; and

4. whether those California operations formed part of the operational system governing the conduct alleged in the Complaint.

This request is limited to concrete jurisdictional facts and is not a request for general merits discovery. Plaintiffs seek discovery because Delta controls the relevant organizational and operational information, not because Plaintiffs rely on an unsupported hunch. The Ninth Circuit permits jurisdictional discovery when pertinent facts are controverted or a more satisfactory factual showing is necessary. *Laub v. United States Department of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). At this stage, Plaintiffs need make only a prima facie showing, and factual conflicts are construed in Plaintiffs' favor. *Schwarzenegger*, 374 F.3d at 800.

*Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) does not foreclose discovery where discovery is directed to identified policies, personnel, facilities, and operational systems that could establish the required forum connection. Conversely, Plaintiffs do not contend that every Delta policy or every California operation is sufficient. The requested discovery is intended to determine whether a concrete California connection exists.

*Walden v. Fiore*, 571 U.S. 277, 285, 290 (2014) and *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262–65 (2017) do not require dismissal before Plaintiffs can examine Delta's own

forum-related conduct. Delta's assertion of the jurisdictional defense preserves the issue but does not establish its merits. Fed. R. Civ. P. 12(h)(1)(B)(ii).

Plaintiffs therefore request that the Court deny Delta's motion, or deny it without prejudice to renewal following jurisdictional discovery.

Should the Court determine, with or without jurisdictional discovery, that it lacks personal jurisdiction over Delta, the appropriate remedy is transfer to the Northern District of Ohio rather than dismissal. The distinction is dispositive for three of the five Plaintiffs.

The collision occurred on May 12, 2024. Plaintiffs filed this action on May 11, 2026, one day before the two-year limitations period expired. That period has now run under either potentially applicable statute. *See* Cal. Civ. Proc. Code § 335.1; Ohio Rev. Code § 2305.10. The claims of the minor Plaintiffs remain tolled during their minority. *See* Cal. Civ. Proc. Code § 352(a); Ohio Rev. Code § 2305.16. The claims of Shawnell Byrd, Cherice D. Jones-Byrd, and Chamirra Lewis are not. For those three Plaintiffs, an order dismissing this action — even one nominally without prejudice — would operate as a dismissal with prejudice, because no new action could be commenced in any forum. Dismissal would convert a timely-filed action into a permanently barred one on a purely procedural ground, while transfer resolves Delta's objection completely and costs Delta nothing it is entitled to.

Plaintiffs therefore respectfully request that, in the event the Court concludes it lacks personal jurisdiction over Delta, it transfer this action to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. §§ 1406(a) and 1631, rather than dismiss it.

This would preserve the action while placing it near the airport, tower, air-traffic-control personnel, and other relevant evidence.

* * * * *

The parties thank the Court for its consideration of this joint report.

Respectfully submitted,

/s/ David F. Knapp
David F. Knapp